FILED
MAY 29 2015
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

GARRY L MCCUE

v.

KabaTec
Brown
KHORRAMI POLLARD
DEJBAN LAW OFFICES OF
SHAWN KHORRAMI

Civil No. 15CV1092 BTM (KSC)

REQUEST FOR subject matter Jurisdiction THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e 5(f)(1); DECLARATION IN SUPPORT OF
§ S 936(
2006, 2006, Age, Race, Color
2000, 2000. co.v. us. ct cl
1967, 387. F.2d 657 181 ct cl
170 commerce 182 1343 sqp

1.  I, the plaintiff in the Motion to Amend discrimination action, request that the court should Amend It Finding of Fact, A, Argument.
1. Notice of Ineligibility. Date 5/14/09. NO Age mention GATE Committee. Review. 2. Extraordinary Injury payment letter sent. of 5/14/09 Regarding Ineligibility. after a sec Full Review by The Gate committee it was determined Still Ineligible. 7/16/09. Letter From kabatec Brown Kenllman Igerton 2/25/13. on 7/16/09 Because of my Age and Color. now Im. no more. Ineligibility Listed of Reasons That was fine bovend Mr Garry McCue was Look as a old white male on 7/16/09 now Im 42 yrs Back man. now I Do not meet gate Eligibility Requirement

MAY 29 2015
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
RECEIVED

Ex. 1 Order Granting IFP
2, Civil Action
3 2000d 2000d1
 Subchapter V Federally Assisted Programs
4 2: 431 – 484
5, Action For Damages or Other Relief
 {28 USC {1343} see also 42 1383}
6 Claims Administrator Notice of Ineligibility.
7 Letter to me on 2/28/13
8 / Letter on 8/6/07
9 Letter on 11/16/07
 on 1/11/08.
 on 7/16/09
 Doctor Letter on 8/19/07

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARRY L. MCCUE,<br><br>Plaintiff,<br><br>v.<br><br>SHAWN KHORRAMI, BAHAR DEJBAN, LAW OFFICES OF SHAWN KHORRAMI.<br>Defendants, | Case No. 15cv1092 BTM(KSC)<br><br>**ORDER GRANTING IFP AND DISMISSING CASE** |

On May 14, 2015 Plaintiff Garry L. McCue ("Plaintiff") filed a Complaint and concurrent Motion for Leave to Proceed *in forma pauperis* ("IFP Motion"), 42 U.S.C. § 3604 (F)(3)(A), against the Defendants Shawn Khorrami, Bahar Dejban, and the Law Offices of Shawn Khorrami. For the reasons discussed below, the IFP Motion is GRANTED and the Complaint is DISMISSED with leave to amend.

## DISCUSSION

I. <u>Motion to Proceed IFP</u>

Upon review of Plaintiff's affidavit in support of his IFP Motion and supporting documents, the Court finds that Plaintiff receives Supplemental

Security Income and has made a sufficient showing of inability to pay the filing fees required to prosecute this action. Accordingly, Plaintiff's IFP Motion is **GRANTED**.

II. <u>Lack of Subject Matter Jurisdiction</u>

Although the Court will allow Plaintiff to proceed IFP, Plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction.

Plaintiff's Complaint suffers from several defects. First, although Plaintiff's Civil Cover Sheet suggests that the Court has jurisdiction over this action because there is both a U.S. Government plaintiff and defendant, further analysis of the pleadings reveals this not to be the case (Dkt. No. 1, 1-1.) It is also clear from the Complaint that the Court lacks federal question jurisdiction or diversity jurisdiction over this matter.

First, Plaintiff marked the nature of the suit on the Civil Cover Sheet as "personal injury- medical malpractice." (Dkt. No. 1-1.) Plaintiff appears to be suing his current or former attorneys for allegedly mishandling his receipt of compensation from an unrelated medical lawsuit settlement pending in the Superior Court for the County of Los Angeles (Dkt. No. 1, at 5.) Plaintiff's cause of action appears to arise under state tort law and does not require resolution of a substantial question of federal law. Therefore, Plaintiff's case fails to establish federal question jurisdiction.

Second, the Court has no basis for concluding that diversity jurisdiction exists. 28 U.S.C. § 1332(a). According to the Complaint and attached exhibits, Plaintiff appears to be a citizen of California residing in San Diego Country (Dkt. No. 1, at 5.) Plaintiff does not allege that Defendants are diverse from him, nor does he state their state of residence, incorporation or principal place of business However, it appears that Defendant Law Offices of Shawn Khorrami maintains its place of business in Van Nuys, California. (Dkt. No. 1, at 5). Therefore, complete diversity between the parties is lacking.

2

15cv1092 BTM(KSC)

## CONCLUSION

For the reasons discussed above, Plaintiff's IFP Motion is **GRANTED** and the Complaint is **DISMISSED**. Plaintiff has leave to amend the Complaint to satisfy subject matter jurisdiction and shall file an amended complaint within 30 days of the entry of this order.

**IT IS SO ORDERED.**

DATED: May 20, 2015

BARRY TED MOSKOWITZ, Chief Judge
United States District Court

Garry McCue
7761 Belden Street
San Diego, CA 92111

JURISDICTION AND VENUE  Part 4 | Ch. 85  DISTRICT COURT JURISDICTION | 28 § 1336
Note 9

-LY
*ndex*

t contracts, en-

orders 10
rral to Surface
33
orcement orders

payment of mon-

claims 37
g generally, re-
sportation Board

ral Rules of Ap-

laws 3
f money 20
to Surface Trans-

forcement orders

-17

gement contracts

s 11
s 12

action or proceed-

17

diction, referral to
ion Board 27
s 39
referral to Surface
rd 30

nent of money 21
1
orders 13
36
ents, payment of

Payment of money—Cont'd
    Reparations  22
    Shipping charges  23
Persons entitled to maintain action  42
Policy  5
Power of Congress  2
Power of Congress distinguished  6
Primary jurisdiction, referral to Surface Transportation Board  31
Proper or indispensable parties, referral to Surface Transportation Board  32
Referral to Surface Transportation Board  25-34
    Generally  25
    Bankruptcy court  33
    Considerations governing generally  29
    Duty of court  26
    Exclusiveness of jurisdiction  27
    Expertise of Board  30
    Primary jurisdiction  31
    Proper or indispensable parties  32
    Rereferral  34
    Stay of proceedings  28
Refunds, enforcement orders  14
Remand  45
Reparations, payment of money  22
Rereferral, referral to Surface Transportation Board  34
Res judicata  46
Restraint of state action or proceedings, enforcement orders  15
Revenues, enforcement orders  16
Review  43, 44
    Generally  43
    Time for filing  44
Shipping charges, enforcement orders  17
Shipping charges, payment of money
Stay of proceedings, referral to Surface Transportation Board  28
Time for filing, review  44

### 1. Construction

This section giving district courts jurisdiction to enforce or enjoin "any order of the Commission for the payment of money or the collection of fines, penalties and forfeitures" should be interpreted narrowly, in accordance with usual presumption that direct review of administrative action belongs in Court of Appeals...

### 2. Power of Congress

Congress has plenary power to regulate commerce among the states and, therefore, had full power to create the Interstate Commerce Commission and to prescribe its duties and to give it such powers as necessary to accomplish its purpose, even though they might override powers otherwise belonging to the states, and Congress also had full power to prescribe limitations on reviews and appeals from commission's action. Simpson v. South Western Railroad Company, C.A.5 (Ga.) 1956, 231 F.2d 59, certiorari denied 77 S.Ct. 41, 352 U.S. 828, 1 L.Ed.2d 50.

### 3. Construction with other laws

Jurisdiction of Courts of Appeals to review Commission rules, regulations and orders and jurisdiction of federal district courts to review Commission orders "for the payment of money or the collection of fines, penalties, and forfeitures" are mutually exclusive, but Courts of Appeals may directly review Commission order for payment of money if it also involves other types of relief. Pullman-Standard, a Div. of Pullman Inc. v. I.C.C., C.A.7 (Ill.) 1983, 705 F.2d 875.

Nothing in legislative history of 1975 amendment to this section and sections 2321 and 2342 of this title indicates intention to vest in courts of appeals any jurisdiction with respect to Interstate Commerce Commission orders other than the jurisdiction previously exercised by three-judge district courts, and single-judge district courts retain jurisdiction to enjoin or suspend ICC orders for payment of money or collection of fines. Island Creek Coal Sales Co. v. I. C. C., C.A.6 1977, 561 F.2d 1219. Federal Courts ⟸ 1141

### 4. Construction with Federal Rules of Appellate Procedure

Federal Rules of Appellate Procedure and rule of appellate procedure for appeals as of right did not apply to steel company's appeal from Interstate Commerce Commission's denial of challenge to railroad company's rates as unreasonable. Burlington Northern, Inc. v. Northwestern Steel & Wire Co., C.A.7 1986, 794 F.2d...

sons faced with threat of irreparable injury through exposure to liability for mounting penalties awaiting commencement of enforcement proceedings. I. C. C. v. Atlantic Coast Line R. Co., U.S.Fla. 1966, 86 S.Ct. 1000, 383 U.S. 576, 16 L.Ed.2d 109.

### 6. Power of Congress distinguished

Jurisdiction of federal district court under statutes relating to commerce is not coextensive with power of Congress. McFaddin Exp., Inc. v. Adley Corp., D.C.Conn.1965, 240 F.Supp. 791, affirmed 346 F.2d 424, certiorari denied 86 S.Ct. 643, 382 U.S. 1026, 15 L.Ed.2d 539.

### 7. Civil action

Words "civil action", as used in this section and § 1398 of this title, do not require a party challenging a Commission order to institute an entirely new action by filing a separate petition against the Commission in the Court of Claims and by pursuing the new action to conclusion before original case is reopened; the more sensible reading of said sections shows that Congress used such term simply to distinguish it from a "criminal action" and that nothing more should be inferred from the term. McLean Trucking Co. v. U. S., Ct.Cl.1967, 387 F.2d 657, 181 Ct.Cl. 170. Commerce ⟸ 152

### 8. Enforcement orders—Generally

Federal district court was limited, under this section, to enforcing order of Interstate Commerce Commission for merger of motor carriers, and had no power to expand and supplement order, and where it had been found upon hearing that there would be no substantial adverse effect upon employees and where there had been compliance with applicable collective bargaining agreements, court would not go further to include guarantee of affirmative action to protect interests of employees. Walters v. Roadway Exp., Inc., C.A.5 (Miss.) 1980, 622 F.2d 162.

### 9. —— Approval of management contracts, enforcement orders

Commission order approving temporary management contract between certi-

UBLIC HEALTH AND WELFARE   Ch. 21

ens.
ation of rights.
e with civil rights.
revent.
on of certain laws.
ation of civil rights.
ate judges; appointment of persons to execute
epts; refusing to receive or execute process.
ted to execute process.

roceedings; penalties; trial by jury.
rvation of traditional religions of Native Ameri-
ligious use of peyote.

—INSTITUTIONALIZED PERSONS

actions.
rity.
uirements; Attorney General to personally sign
actions.
etaliation.
rs.
ess.
e of funds.
al departments.
ecting standards of care.
ecting private litigation.

II—PUBLIC ACCOMMODATIONS

ainst discrimination or segregation in places of
modation.
ainst discrimination or segregation required by
ute, ordinance, regulation, rule or order of a State
cy.
ainst deprivation of, interference with, and pun-
exercising rights and privileges secured by section
0a-1 of this title.
or injunctive relief.
elations Service; investigations and hearings; ex-
ion; release of testimony; duty to bring about
ttlements.
Attorney General

Ch. 21   CIVIL RIGHTS

Sec.

SUBCHAPTER III—PUBLIC FACILITIES

2000b.      Civil actions by the Attorney General.
2000b-1.    Liability of United States for costs and attorney's fee.
2000b-2.    Personal suits for relief against discrimination in public facili-
            ties.
2000b-3.    "Complaint" defined.

SUBCHAPTER IV—PUBLIC EDUCATION

2000c.      Definitions.
2000c-1.    Omitted.
2000c-2.    Technical assistance in preparation, adoption, and implementa-
            tion of plans for desegregation of public schools.
2000c-3.    Training institutes; stipends; travel allowances.
2000c-4.    Grants for inservice training in dealing with and for employment
            of specialists to advise in problems incident to desegregation;
            factors for consideration in making grants and fixing amounts,
            terms, and conditions.
2000c-5.    Payments; adjustments; advances or reimbursement; install-
            ments.
2000c-6.    Civil actions by the Attorney General.
2000c-7.    Liability of United States for costs.
2000c-8.    Personal suits for relief against discrimination in public edu-
            cation.
2000c-9.    Classification and assignment.

SUBCHAPTER V—FEDERALLY ASSISTED PROGRAMS

2000d.      Prohibition against exclusion from participation in, denial of
            benefits of, and discrimination under Federally assisted pro-
            grams on ground of race, color, or national origin.   Age   42
2000d-1.    Federal authority and financial assistance to programs or activi-
            ties by way of grant, loan, or contract other than contract of
            insurance or guaranty; rules and regulations; approval by
            President; compliance with requirements; reports to Congres-
            sional committees; effective date of administrative action.
2000d-2.    Judicial review; administrative procedure provisions.
2000d-3.    Construction of provisions not to authorize administrative action
            with respect to employment practices except where primary
            objective of Federal financial assistance is to provide employ-
            ment.
2000d-4.    Federal authority and financial assistance to programs or activi-
            ties by way of contract of insurance or guaranty.
2000d-4a.   "Program or activity" and "program" defined.
2000d-5.    Prohibited deferral of action on applications by local educational
            agencies seeking federal Funds for alleged noncompliance
            with Civil Rights Act.
2000d-6.    Policy of United States as to application of nondiscrimination
            provisions in schools of local educational agencies.
2000d-7.    Civil rights remedies equalization.

SUBCHAPTER VI—EQUAL EMPLOYMENT OPPORTUNITIES

[2:428 — 2:437]

U.S. alleging that Dutch, British and Nigerian corporations aided and abetted Nigerian government in committing violations of Nigerian law not cognizable under ATS; see also ¶2:11.1]

Claims under the ATS do not "touch and concern" the U.S. simply because defendants are citizens of, or present in, this country. [*Mastafa v. Chevron Corp.*, supra, 770 F3d at 188 (collecting cases); *Mujica v. AirScan Inc.* (9th Cir. 2014) 771 F3d 580, 591 (2014 WL 5839817, *8)—no ATS jurisdiction over two U.S. corporations for alleged complicity in bombing of Columbian village; compare *Al Shimari v. CACI Premier Technology, Inc.* (4th Cir. 2014) 758 F3d 516, 530-531—ATS claims "touched and concerned" U.S. where contract made here]

[2:428-429]   *Reserved.*

6) [2:430] **Compare—attachment of property:** Property of a *foreign state* located in the U.S. is immune from attachment or execution *unless the property* is "used for a commercial activity" in the U.S. [28 USC §1610(a); see *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.* (9th Cir. 2007) 475 F3d 1080, 1091—"used for" means put into service for commercial activity (mere use in connection with or in relation to commercial activity not sufficient)]

No such immunity applies, however, to property *of an agency or instrumentality* of a foreign state that is "engaged in commercial activity" (28 USC §1610(b)). [See *Ministry of Defense & Support for Armed Forces of Islamic Republic of Iran v. Elahi* (2006) 546 US 450, 452, 126 S.Ct. 1193, 1194]

[2:431-434]   *Reserved.*

(h) [2:435] **Civil rights:** Actions for damages or other relief because of deprivation of civil rights, including the right to vote. [28 USC §1343; see also 42 USC §13981 (e)(3) (civil rights for women)]

(i) [2:436] **Federal taxes:** [28 USC §1340]

(j) [2:437] **Bankruptcy:** District courts have original jurisdiction in civil proceedings arising under Title 11 (Bank-

| V2081 | CLAIMS ADMINISTRATOR NOTICE OF INELIGIBILITY AFTER RECEIPT OF ADDITIONAL CLAIMS MATERIAL (Date of Notice: 5/14/09) |
|---|---|

### I. CLAIMANT INFORMATION

| Claimant Name | McCue, Gary | | VCN | 1046225 |
|---|---|---|---|---|
| Law Firm | Kabateck Brown Kellner | | | |
| Primary Injury: | MI | Date of Event: | 7/5/01 | |

### II. CLAIMS ADMINISTRATOR DETERMINATION FOLLOWING REVIEW OF ADDITIONAL MATERIALS

This is an official Notification from BrownGreer PLC, the Vioxx Claims Administrator. After reviewing the additional claims material submitted in support of the claim, the Claims Administrator has determined that this claim does not meet the Eligibility Requirements for the Program because it does not pass the following Gate(s):

| 1. | Injury | [X] |
|---|---|---|
| 2. | Duration | [X] |
| 3. | Proximity | [X] |

### III. STATUS OF REQUIRED PME RECORDS

Section 1.3.1 and, by reference, Exhibit 1.3.1 require PME records, which, for eligibility determinations include a completed Claims Form, Event Records and Proof of Vioxx Use. If any of the boxes in this section is checked, it is because the Claims Administrator has determined that your Claims Package did not include those required records. Without a completed Claims Form and both Event Records and Proof of Use, a claim may not pass the Eligibility Requirements.

| 4. | No Event Records Submitted for Claimed Injury | [X] |
|---|---|---|
| 5. | No Proof of Use Submitted | [ ] |
| 6. | No Asserted Injury Date on Claims Form | [ ] |

### IV. STATUS OF CLAIMS FOLLOWING REVIEW OF ADDITIONAL MATERIALS

The Claims Administrator has reviewed all newly submitted information and has determined the claim to be ineligible. We will send the claim and all information you have submitted to the Gate Committee, pursuant to Section 2.5 of the Settlement Agreement. Submission of your claim to the Gate Committee is automatic and requires no further response or action on your part.

### V. GATE COMMITTEE REVIEW

The Gate Committee is comprised of three representatives appointed by Merck and three representatives appointed by the Negotiating Plaintiffs' Counsel. The Gate Committee will review your submitted Claims Package and determine if you should be deemed a Qualifying Program Claimant who is eligible to receive benefits in the Settlement Program. If a majority of the Gate Committee decides that your claim is eligible, the Claims Administrator will notify you of that result and will then review the claim for Points Assessment. If the Gate Committee decides that your claim is not eligible, the Claims Administrator will send you a *Gate Committee Notice of Ineligibility*, which will outline the options available to you under the Settlement Agreement.



**Kabateck** Brown Kellner LLP

February 25, 2013

**VIA U.S. MAIL**
Garry L. McCue
7761 Belden St. Apt. No. 86
San Diego, CA 92111

*Re:   Garry L. McCue v. Merk and Company Inc.; McKesson Corporation*
*Questions on the Vioxx Settlement*

Dear Mr. McCue:

I am writing you in response to recent questions, you have asked about your Vioxx claim and lawsuit. On February 8, 2013, you sent a letter to, Jose Rodriguez, one of our firm's paralegals, containing medical records and a letter stating that you have sconcerns regarding your Vioxx lawsuit.

I am enclosing a copy of your entire file. These documents include "Release of All Claims," which was signed by you and also notarized on January 14, 2008. The Release of All Claims authorized our office to agree to the settlement proposed by defendant Merck in the Vioxx litigation on your behalf. Moreover, it was determined by independent retired judges, that your claim did not qualify under the terms of the settlement. Indeed, you were advised that you would not qualify under the settlement and that this would mean that you would not receive any benefits under the settlement in various correspondence, including the following:

- <u>May 14, 2009 Letter Regarding Ineligibility (enclosed)</u>

A letter was sent to you on May 14, 2009 regarding your ineligibility to qualify under the settlement. It was explained that we had filed an appeal on your behalf and that your claim was submitted for re-evaluation for eligibility by the Gates Review Committee.

- <u>July 16, 2009 Letter  Regarding the Appeal (enclosed)</u>

After completion of the second full review by the Gates Committee it was determined that your claim was still ineligible and a second letter was mailed to you on July 16, 2009 explaining the results of the appeal and the determination reached by the Gates Committee.



**K** Kabateck
**B** Brown
**K** Kellner LLP

644 South Figueroa Street
Los Angeles, CA 90017
Tel: (213) 217-5000    Fax (213) 217-5010
www.kbklawyers.com

The Law Offices of **Shawn Khorrami**

444 South Flower Street, 33rd Floor
Los Angeles, CA 90017
Tel: 213.596.6000    Fax: 213.596.6010
www.khorrami.com

August 6, 2007

**ATTORNEY- CLIENT PRIVILEGED**
**CONFIDENTIAL COMMUNICATION**

MCCUE, Gary
5852 Duluth Street
San Diego, CA 92114

Re:    **Vioxx Litigation Update**

Dear Client:

    I am writing to you on behalf of Kabateck Brown Kellner LLP ("KBK") and the Law Offices of Shawn Khorrami ("Khorrami"), the law firms representing you in your case against Merck.

    As you may be aware, numerous Vioxx trials have taken place around the country with mixed results from the plaintiffs' perspective. Juries have found in favor of defendant Merck ten times and in favor of plaintiffs five times. Currently Merck's stated public position is that they will try every single case. While that position may be unrealistic, nevertheless the fact remains that plaintiffs must be prepared for trial whenever their cases are selected by the Court.

    Two trials have taken place in California (the jurisdiction in which your case has been filed) with numerous others scheduled to take place over the next two years. In August 2006, a jury found in favor of defendant Merck in a case involving a 71 year-old man that had taken Vioxx for over two years and suffered a heart attack in 2001. In January 2007, a jury was unable to reach a verdict in a case involving two plaintiffs – a 77 year-old man that took Vioxx for almost five months and suffered a heart attack in March 2002, and a 56 year-old man who had a heart attack in December 2000 after more than eighteen months of Vioxx use. A mistrial was declared and the case involving those same two plaintiffs is set for retrial on October 1, 2007.



**KHORRAMI POLLARD & ABIR, LLP**

644 S. Figueroa St.
Los Angeles, CA 90017
Tel: (213) 217-5000     Fax (213) 217-5010
www.kbklawyers.com

444 Flower St., 33rd Floor
Los Angeles, CA 90071
Tel: 213.596.6000    Fax: 213.596.6010
www.khorrami.com

November 16, 2007

## ATTORNEY- CLIENT PRIVILEGED CONFIDENTIAL COMMUNICATION

MCCUE, Gary
5852 Duluth Street
San Diego, CA 92114

Re:  **In Re Vioxx Products Liability Litigation**

Dear Client:

We are extremely pleased to personally advise you that Merck has offered to globally settle a portion of the pending Vioxx cases. This multi-billion dollar settlement offer is the result of years of hard work by our law firms, along with scores of other law firms that have aggressively litigated this case on your behalf. Even though there has been a great deal of media coverage of this settlement offer, we understand that you may have a number of questions about how this potential settlement affects your case and the timing of when your case will be finalized.

### WHAT CAN I EXPECT FROM HERE?

**Your** case has not yet been **officially settled**. We are in the process of evaluating your cases **on an individual basis** to determine whether the settlement offer represents a fair offer. To that end, we are extremely encouraged by the size of the global settlement offer ($4.85 billion). As you can imagine, the determination of how the $4.85 billion will be split among the tens of thousands of Vioxx plaintiffs is very complicated and will be based upon an evaluation of **each case's relative merit**.

Merck is limiting its offer to settle to heart attack and certain types of stroke cases. For those cases that are covered by the settlement offer, a complicated formula has been proposed to determine the distribution of settlement proceeds, including the nature and severity of the injury, the extent of Vioxx usage, and the health and family medical history for each plaintiffs. As a result, it is critical that we promptly receive all pertinent medical and pharmacy records so we can maximize your recovery if you qualify and agree to participate in the settlement.



**KHORRAMI POLLARD & ABIR** LLP

Attorneys At Law

Shawn Khorrami
Dylan Pollard
Danny Abir
Matt C. Bailey
Bahar Dejban
Nancy Gardner
James Kenna
Sonia Tandon
Analissa Ward
Charles G. Brown
*Of Counsel*

**PERSONAL & CONFIDENTIAL**
**ATTORNEY-CLIENT PRIVILEGED**

January 11, 2008

Gary McCue
5852 Duluth Street
San Diego, CA 92114

Re: *Vioxx Settlement*

Dear Gary McCue:

I am writing on behalf of the law firms of Khorrami Pollard & Abir LLP and Kabateck Brown Kellner LLP, who represent you in this litigation. Anthony Salinas, the client relations clerk assigned to your case, will contact you after you receive this package to give you important information and answer your questions. Anthony Salinas's direct number is: 213 596 6536 and email address is Asalinas@kpalawyers.com.

Enclosed are documents of the utmost importance to your case. If you fail to follow our specific instructions, your claim **WILL** be **DISMISSED**. The document entitled Release of All Claims **MUST** be signed in the presence of a notary. A representative from the notary company which we have hired will contact you within 3 to 4 days of your receipt of this package to make arrangements to meet with you. At that meeting ALL of the signed documents must be given to the Notary.

- **RECOMMENDATION OF SETTLEMENT:** A presentation of the arguments in favor of accepting this settlement. Please read, and sign on page 4, and give to the notary.
- **RELEASE OF ALL CLAIMS:** <u>DO NOT SIGN</u> this document on page 9 until the notary is present with you. Please read carefully.
- **AUTHORIZATION FOR RELEASE OF MEDICAL AND/OR EMPLOYMENT RECORDS:** Please read, sign, and give the entire document to the notary.

The Court will strictly enforce the deadlines of this Settlement Agreement and **WILL DISMISS YOUR CASE** if you fail to comply. These documents **MUST** be signed, notarized, and returned to our office within **14 DAYS** of the date of this letter, so it is imperative that you set a meeting with the Notary as soon as he or she contacts you. We thank you for your cooperation.

Sincerely,

KHORRAMI POLLARD & ABIR LLP

By: _____
JAMES KENNA, ESQ.

444 South Flower Street 33rd Floor Los Angeles, CA 90071  Tel 213.596.6000  Fax 213.596.6010



**Kabateck Brown Kellner LLP**

644 So. Figueroa Street
Los Angeles, CA 90017
Tel: (213) 217-5000   Fax (213) 217-5010
www.kbklawyers.com

**KHORRAMI POLLARD & ABIR LLP**

444 South Flower Street, 33rd Floor
Los Angeles, CA 90071
Tel: 213.596.6000   Fax: 213.596.6010
www.kpalawyers.com

<u>PERSONAL & CONFIDENTIAL</u>
<u>ATTORNEY-CLIENT PRIVILEGED COMMUNICATION</u>

July 16, 2009

Gary McCue
5852 Duluth Street
San Diego, CA 92114

Re:   Vioxx Products Liability Litigation
      GATE COMMITTEE NOTICE OF INELIGIBILITY

Dear Gary McCue:

As you know from previous correspondence, your claim was determined to have failed one or more "Gates requirements". On your behalf, we appealed the decision to the Gates Committee in hope that they would reconsider their decision and award compensation for your claim.

After completing a second full review of your records, the Gates Committee at Brown Greer PLC, claims administrator for the Vioxx settlement, has determined that your claim continues to fail one or more of the Gates and does not meet the Eligibility Requirement for the Settlement Program. We have enclosed your ineligibility notice from the Gates Committee. Brown Greer PLC has listed the following reasons for ineligibility:

- **INJURY:** Your Injury does not satisfy the Injury criteria as defined by Section 2.2.1.1. of the Vioxx Settlement Agreement dated November 9, 2007.

- **DURATION:** Your records fail to establish the requisite Duration of usage as defined by Section 2.2.1.2. of the Vioxx Settlement Agreement dated November 9, 2007

- **PROXIMITY:** Your records fail to establish the requisite Proximity of usage as defined by Section 2.2.1.3. of the Vioxx Settlement Agreement dated November 9, 2007.

**RAVINDRA PRABHU** MD FACC

DIPLOMATE CARDIOVASCULAR DISEASES AND CRITICAL CARE

4065 THIRD AVENUE
SUITE 101
SAN DIEGO, CALIFORNIA 92103
(619) 298-9526

750 MEDICAL CENTER COURT
SUITE 3
CHULA VISTA, CALIFORNIA 91911
(619) 482-0112

Albert Sharf, M.D.
655 Euclid Avenue, #205
National City, CA  91950

August 19, 2002

Re:  Garry McCue

Dear Albert,

I saw Mr. McCue in consultation. He is a 43-year-old gentleman with a history of a permanent pacemaker implanted on 08/14/01. The patient was in the hospital for surgery for suspected intestinal obstruction from adhesions. Preoperative evaluation showed what the patient describes as complete heart block. A pacemaker was inserted. The atrial lead apparently malfunctioned one month later. Dr. Robinson, who was the original implanter, apparently "did not want to reposition the lead". The patient has had apparently constant chest pains since the time of the pacemaker insertion. However, upon asking, it appears that the pain is related to pacing stimulation. I specifically asked him whether the pain is due to diaphragmatic stimulation or contraction or hiccuping, etc., but the patient denies that. His pacemaker was turned down to a rate of 40 beats per minute and thus the episodes have significantly diminished. However, he does feel pains at night while sleeping, presumably because the rate drops down sufficiently for the pacemaker to come through. During the pacing episode, he also feels a swelling in the neck. So far, no additional adjustment has been helpful in relieving his symptoms. A pacemaker syndrome has been suspected and the patient is here to see if anything can be done to relieve his symptoms.

**Past Medical History:** 1) History of multiple arthritic problems or orthopedic problems including chronic dislocation of the right shoulder and chronic problems with the right knee. 2) History of bilateral carpal tunnel syndrome. 3) History of almost total blindness in the right eye from glaucoma. The patient has been declared disabled since 1998. 4) History of hypertension.

**Family History:** Father is 82 and has diabetes. Mother is 72 and alive and well. Brother age 44 and sister age 45 have "heart trouble", details are unavailable.

**Medications:** Wellbutrin 150 mg daily, Lipitor 10 mg daily, Remuron one-half tablet daily, and Tylenol w/Codeine. He also takes eye drops for glaucoma.

Fixed Payments

Qualifying Claimants who are notified by the Claims Administrator that their total MI or IS points are less than a specified amount shall have the option to receive a gross Fixed Payment of $5,000 instead of the (likely much smaller) award they would receive if all appropriate risk factor and liability adjustments were made to their base point total. Qualifying Claimants eligible for the Fixed Payment who do not choose to receive the Fixed Payment shall receive de novo review of their claim by the Special Master. The Special Master shall award 0 to 5 points to each such MI claim, and shall award 0 to 1 point for each such IS claim, and the determination of the Special Master shall be final and non-appealable.

Extraordinary Injury Payments

Qualifying Claimants who would like their claim to be considered as an Extraordinary Injury may apply through their Primary Counsel to receive an Extraordinary Injury Payment ("EI Payment"). Such Qualifying Claimants may be eligible for an EI Payment if: (a) the Qualifying Claimant is not eligible for a Fixed Payment; and (b) the Qualifying Claimant submits records reflecting an injury that is not adequately reflected within the point grid; and/or (c) the Qualifying Claimant has specified, documented, economic damages of at least $250,000. Such damages include the Qualifying Claimant's past or future out-of-pocket medical expenses and the Qualifying Claimant's past lost wages to the extent that such expenses or lost wages are the result of the Qualifying Claimant's heart attack or stroke and have neither been reimbursed nor are eligible for reimbursement from any other source.

Each Qualifying Claimant who qualifies for, and timely applies for, an EI Payment shall receive such a payment in an amount to be based on criteria to be determined by the Claims Administrator. Any such EI Payment shall be in addition to the Qualifying Claimant's Final Payment (see below). EI Payments for all Qualifying MI Claimants shall not in the aggregate exceed $195 million; EI Payments for all Qualifying IS Claimants shall not in the aggregate exceed $105 million. All proposed EI Payments shall be reduced pro rata if necessary to meet these restrictions.

Final Payments

After, and only after, (i) all Qualifying Claimants have completed the claims valuation process and all points awards have become final; and (ii) all possible Fixed Payments and Extraordinary Injury Payments have been determined; and (iii) all audits have been completed, the Claims Administrator shall determine the MI and IS Point Values.

The total gross value of each Qualifying MI and IS Claimant's claim can then be determined by multiplying the Qualifying Claimant's total number of points by the MI or IS Point Value, as appropriate. The final gross payment to be made to each such

6

# DESCRIPTION OF SETTLEMENT AGREEMENT

Merck & Co. ("Merck") has entered into a Settlement Agreement ("Agreement") with certain plaintiffs' counsel ("Negotiating Plaintiffs' Counsel") in order to establish a nationwide settlement program to resolve the claims of certain individuals who have suffered a heart attack, stroke, or sudden cardiac death resulting from their use of Vioxx (the "Vioxx Claimant(s)").

## Activation of the Settlement Program

In order for claims to be paid under the Settlement Program, counsel representing Vioxx Claimants must file with the relevant court no later than January 15, 2008, a Registration Affidavit for every Vioxx client they represent as primary counsel, regardless of whether the client suffered a heart attack, ischemic stroke, or sudden cardiac death resulting from Vioxx. The Registration Affidavit will contain basic information about each client and the injury the client alleges.

After the Registration Affidavits have been submitted, the Claims Administrator will calculate the total number of Vioxx Claimants that are eligible to participate ("Eligible Claimants") in the Settlement Program. A Vioxx Claimant will be considered eligible to participate in the Settlement Program if:

- the Claimant has a filed Vioxx lawsuit pending in any jurisdiction or a Vioxx claim that was tolled under the Tolling Agreement established by the MDL Court; and
- the Claimant alleged in his/her lawsuit or tolling paperwork that the Claimant (or the Deceased or minor for whom the Claimant is the Legal Representative) suffered a heart attack, ischemic stroke, or sudden cardiac death as a result of Vioxx ingestion.

In order for the Settlement Program to be activated and for Merck to be required to fund the settlement, at least 85% of all Eligible Claimants must agree to participate in the Settlement Program. All documents necessary for a Vioxx Claimant to participate in the Settlement Program must be submitted to the Claims Administrator by March 1, 2008. Sufficient numbers of Eligible Claimants from each of the following categories must agree to participate in the Settlement Program in order for the Program to be Activated:

- Vioxx Claimants registered as alleging a heart attack or myocardial infarction or qualifying myocardial infarction or sudden cardiac death ("MI Eligible");
- Vioxx Claimants registered as alleging a stroke or other qualifying ischemic cerebrovascular event ("IS Eligible");
- Vioxx Claimants registered as alleging use of Vioxx for more than 12 months prior to a qualifying heart attack ("MI") or qualifying stroke ("IS");
- Vioxx Claimants registered as alleging death as an injury.